UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NATHANIEL PHILLIPS, <br><br> Plaintiff, <br><br> v. <br><br> VALOR INTELLIGENT PROCESSING, LLC, <br><br> Defendant. | CIVIL ACTION <br><br> COMPLAINT 1:20-cv-05040 <br><br> JURY TRIAL DEMANDED |

## COMPLAINT

NOW COMES NATHANIEL PHILLIPS ("Plaintiff"), by and through his undersigned attorney, complaining as to the conduct of VALOR INTELLIGENT PROCESSING, LLC ("Defendant") as follows:

### NATURE OF THE ACTION

1. Plaintiff brings this action for damages pursuant to the Fair Debt Collection Practices Act ("FDCPA") under 15 U.S.C. §1692 *et seq.* and the Telephone Consumer Protection Act ("TCPA") under 47 U.S.C. §227 *et seq.* for Defendant's unlawful conduct.

### JURISDICTION AND VENUE

2. This action arises under and is brought pursuant to the FDCPA and TCPA. Subject matter jurisdiction is conferred upon this Court by 15 U.S.C §1692, 28 U.S.C. §§1331 and 1337, as the action arises under the laws of the United States.

3. Venue is proper in this Court pursuant to 28 U.S.C. §1391 as Plaintiff resides in this District and all of the events or omissions giving rise to the claims occurred in this District.

### PARTIES

4. Plaintiff is a consumer, over 18 years of age, and is domiciled in Chicago, Illinois.

1

5. Defendant is a third party debt collection service with its principal place of business located at 6703 Southpoint Drive North, Suite 300, Jacksonville, Florida 32216. Defendant regularly collects, or attempts to collect, defaulted debts from consumers located within the State of Illinois.

6. Defendant acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers at all times relevant to the instant action.

## FACTS SUPPORTING CAUSES OF ACTION

7. In or around July 2020, Defendant began placing collection calls to Plaintiff's cellular telephone number (312) XXX-6142, in an attempt to collect on an alleged debt unknown to Plaintiff ("alleged debt").

8. Plaintiff was the sole subscriber, owner, possessor, and operator of the cellular telephone ending in 6142.

9. Upon information and belief, Defendant acquired the rights to collect upon the alleged debt after it went into default.

10. On July 16, 2020, Plaintiff answered a call from Defendant and spoke with a representative. In this call, Defendant's representative informed Plaintiff that Defendant was seeking to collect on a debt. Subsequently, during the call, Plaintiff informed Defendant's representative that he did not wish to receive any further calls.

11. Despite Plaintiff's request for the calls stop, Defendant continued to call Plaintiff on his cellular phone.

12. Some examples of calls Defendant made to Plaintiff include, but are not limited to, the following dates and times: July 22, 2020 at 11:10 a.m., July 24, 2020 at 10.27 a.m., July 24, 2020

at 3:30 p.m., July 27, 2020 at 9:56 a.m., July 27, 2020 at 4:10 p.m., July 28, 2020 at 1:58 p.m., July 28, 2020 at 4:40 p.m., and July 30, 2020 at 3:16 p.m.

13. On July 31, 2020, Plaintiff answered another call from Defendant from a male representative. Plaintiff informed Defendant's representative that he had already informed Defendant that he did not wish to receive any further calls. However, Defendant's representative responded something to the effect of "I must verify that this is Nathaniel Phillips because you have a debt that is owed and you must pay it." Plaintiff then asked Defendant the name of his firm to which Defendant's representative responded "Valor Intel."

14. During the call, Plaintiff then asked Defendant, again, not to call him but also advised that Plaintiff would be open to receiving either emails or regular mail from Defendant so that Plaintiff can fully review the matter. Defendant's representative agreed to sending emails or using regular mail rather than continuing to call Plaintiff on his cellular phone. Defendant's representative finished the call by stating something to the effect of "You have a debt from QVC[1] and I want to know how you would like to pay it." In response, Plaintiff advised Defendant that he has no knowledge of any debt owed to QVC.

15. Despite the above second request for the calls to cease, Defendant continued to call Plaintiff on his cellular phone.

16. Other examples of calls Defendant made to Plaintiff include, but are not limited to, the following dates and times: August 3, 2020 at 2:28 p.m., August 4, 2020 at 11:20 a.m., August 5, 2020 at 11:17 a.m., and August 5, 2020 at 4:35 p.m.

17. On August 6, 2020, Plaintiff answered yet another call from Defendant. This time, Plaintiff spoke with a female representative. Plaintiff again explained that he had already requested that he

---

[1] QVC, which stands for Quality Value Convenience, is an American free-to-air television network, and flagship shopping channel specializing in televised home shopping. QVC is owned by Qurate Retail Group.

no longer receive calls from Defendant, but Defendant's representative insisted on wanting to know whether she was speaking with Plaintiff. Plaintiff then inquired as to the purpose of the call to which Defendant's representative stated "It is a personal matter, and I need to speak with Nathaniel Phillips." Plaintiff responded that if it was something of importance, why not put it in the mail to the attention of "Nathaniel Phillips" but Defendant's representative only responded that she would call back at another time.

18. True to its word, Defendant continued with the barrage of calls. After no less than three requests for the calls to stop, additional examples of calls made by Defendant to Plaintiff's cellular phone include, but are not limited to, the following dates and times: August 7, 2020 at 1:55 p.m., August 10, 2020 at 2:35 p.m., August 11, 2020 at 3:19 p.m., August 12, 2020 at 3:43 p.m., and August 13, 2020 at 3:07 p.m.

19. At no time did Plaintiff ever provide his cellular telephone number to Defendant or otherwise consent to receiving calls from Defendant.

20. Nonetheless, Defendant placed, or caused to be placed, dozens and dozens of harassing phone calls to Plaintiff's cellular telephone.

21. In the calls that Plaintiff did answer, Plaintiff was greeted by a noticeable period of "dead air" while Defendant's automated telephone system attempted to connect Plaintiff to a live agent.

22. Specifically, there would be an approximate 3-second pause between the time Plaintiff said "hello," and the time that a live agent came on the line.

23. Upon information and belief, Defendant placed its calls to Plaintiff's cellular telephone using an automated telephone dialing system, a telephone dialing system commonly used in the debt collection industry to collect defaulted debts.

24. Upon information and belief, Defendant's telephone dialing system may have the capacity to store, and to randomly or sequentially generate consumers' cellular phone numbers, and to dial those numbers.

25. Upon information and belief, Defendant might have called Plaintiff on his cellular phone using a telephone dialing system that had the capacity to randomly or sequentially generate phone numbers.

26. Upon information and belief, Defendant may have the means to identify the subscriber of the telephone number that is stored or produced once that number has been stored or produced.

27. Upon information and belief, Defendant's telephone dialing system may have the capacity to make calls to consumers' cellular phone numbers using an artificial or prerecorded voice.

28. Upon information and belief, Defendant's telephone dialing system might have made calls to Plaintiff using an artificial or prerecorded voice.

29. Defendant has used the phone numbers (331) 321-7529, (331) 321-7575, and (331) 321-7608 to call Plaintiff's cellular phone, but upon information and belief, Defendant uses multiple other phone number to contact Plaintiff.

30. Defendant's false representation and misleading conduct has severely disrupted Plaintiff's daily life and general well-being.

31. Defendant's illegal collection activities have caused Plaintiff actual harm, including but not limited to, emotional distress, mental anguish, and anxiety.

32. Frustrated with the barrage of never-ending calls and concerned about the violations of his rights and invasion of his privacy, Plaintiff was forced to seek the assistance of counsel to file this action to compel Defendant to cease its unlawful conduct.

## COUNT I - VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT

33. Plaintiff repeats and realleges paragraphs 1 through 32 as though fully set forth herein.

34. Plaintiff is a "consumer" as defined by 15 U.S.C. §1692a(3) of the FDCPA.

35. The alleged debt is a "debt" as defined by FDCPA §1692a(5) as it arises out of a transaction due or asserted to be owed or due to another for personal, family, or household purposes.

36. Defendant is a "debt collector" as defined by §1692a(6) of the FDCPA, because it regularly use the mail and/or the telephone to collect, or attempt to collect, delinquent consumer accounts.

37. Moreover, Defendant is a "debt collector" because it acquired rights to the alleged debt after it was in default. 15 U.S.C. §1692a(6).

38. Defendant used a telephone to attempt to collect the alleged debt and, as such, engaged in "communications" as defined in FDCPA §1692a(2).

39. Defendant's communications to Plaintiff were made in connection with the collection of the alleged debt.

40. Defendant violated §§1692c, 1692d, 1692e, and 1692f of the FDCPA.

    **a. Violations of FDCPA §1692c**

41. Defendant violated §1692c(a)(1) when it continuously called Plaintiff after being notified to stop. This repeated behavior of continuously and systematically calling Plaintiff's cellular phone over and over (all times known to be inconvenient to Plaintiff) after he demanded that it cease contacting him was harassing and abusive. Even after being told to stop contacting him, Defendant continued its onslaught of phone calls with the specific goal of coercing Plaintiff into paying the alleged debt.

42. Furthermore, the high volume of calls shows that Defendant willfully ignored Plaintiff's pleas with the goal of annoying and harassing him into submission.

43. Defendant was notified by Plaintiff that its calls were not welcomed and to communicate in writing. As such, Defendant knew its conduct was inconvenient, unwanted, and distressing to him.

### b. Violations of FDCPA §1692d

44. Defendant violated §1692d by engaging in abusive, harassing, and oppressive conduct by relentlessly calling Plaintiff's cellular phone seeking payment on the alleged debt. Moreover, Defendant continued placing the relentless calls after Plaintiff put Defendant on notice that its calls were not welcome on several occasions.

45. Defendant violated §1692d(5) by causing Plaintiff's cellular phone to ring repeatedly and continuously in an attempt to engage Plaintiff in conversations regarding the collection of the alleged debt with the intent to annoy, abuse, or harass Plaintiff. Furthermore, Defendant continued to place these calls after Plaintiff repeatedly informed Defendant its calls were no longer welcome. Specifically, Defendant placed, or caused to be placed, numerous harassing phone calls to Plaintiff's cellular telephone from July 2020 through the present, without his prior consent.

### c. Violations of FDCPA §1692e

46. The FDCPA declares it a violation to make a false representation of the character, amount, or legal status of any debt. 15 U.S.C.S. § 1692e (2)(A). Indeed, merely dunning a person who is not legally obligated to pay the debt makes the debt collector liable under that statute as a matter of law because it is, ipso facto, a false representation about the status or character of the debt." See Owens v. Howe, No. 1:04-CV-152, 2004 U.S. Dist. LEXIS 22728 (N.D. Ind. Nov. 8, 2004).

47. Defendant violated §1692e by using false, deceptive, and misleading representation in connection to collection of the alleged debt. It was misleading for Defendant to continue

contacting Plaintiff seeking to collect on the alleged debt after Plaintiff specifically told Defendant that he had no such knowledge of any debt owed to QVC and to contact him in writing.

48. Furthermore, Defendant violated §1692e(10) by using false representation and deceptive means in connection to the collection of the alleged debt. Defendant falsely represented that it could continue to call Plaintiff regarding the alleged debt even after he made it clear that the debt did not belong to him. Defendant's actions were an attempt to dragoon Plaintiff into paying a debt that did not belong to him.

### d. Violations of FDCPA § 1692f

49. Defendant violated §1692f by using unfair and unconscionable means in attempting to collect on the alleged debt.

50. Specifically, Defendant unfairly attempted to collect on the alleged debt when Plaintiff did not owe the alleged debt. Defendant's unconscionable conduct was employed in order to trick Plaintiff into providing information he did not wish to provide and/or make payment on the alleged debt.

51. Moreover, Defendant's actions in calling Plaintiff dozens and dozens of times especially after he asked for the calls to stop on no less than three occasions, is unconscionable.

52. As an experienced debt collector, Defendant knew or should have known the ramifications of collecting on an alleged debt by using a false premise and incessant harassing phone calls to the cellular phones of consumers.

53. Upon information and belief, Defendant systematically attempts to collect debts through harassing conduct and has no procedures in place to assure compliance with the FDCPA.

**WHEREFORE**, Plaintiff, NATHANIEL PHILLIPS, respectfully requests that this Honorable Court enter judgment is his favor as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned bodies of law;
b. Awarding Plaintiff statutory damages of $1,000.00 as provided under 15 U.S.C. §1692k(a)(2)(A);
c. Awarding Plaintiff actual damages, in an amount to be determined at trail, as provided under 15 U.S.C. §1692k(a)(1);
d. Awarding Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. §1692k(a)(3);
e. Enjoining Defendant from further contacting Plaintiff seeking payment of the alleged debt; and
f. Awarding any other relief as this Honorable Court deems just and appropriate.

### COUNT II - VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT

54. Plaintiff restates and realleges paragraphs 1 through 32 as though fully set forth herein.

55. Defendant placed or caused to be placed non-emergency calls, including but not limited to the calls referenced above, to Plaintiff's cellular telephone using an automatic telephone dialing system ("ATDS") without his prior consent in violation of 47 U.S.C. §227 (b)(1)(A)(iii).

56. The TCPA defines ATDS as "equipment which has the capacity...to store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such numbers." 47 U.S.C. §227(a)(1).

57. Upon information and belief, based on the lack of prompt human response during the phone calls in which Plaintiff answered, Defendant used an automated dialing system to place calls to Plaintiff's cellular telephone.

58. Upon information and belief, the ATDS employed by Defendant transfers the call to a live agent once a human voice is detected, thus resulting in a pause after the called party speaks into the phone.

59. Upon information and belief, Defendant's phone system has the capacity to store telephone numbers to be called, and the capacity to dial those numbers using a random or sequential number generator.

60. There would be no reason for Defendant to continue to contact Plaintiff, especially after having been notified to cease all telephone communications. Yet, Defendant's ATDS continued to keep Plaintiff's phone number stored, causing its system to auto-dial the number dozens of times thereafter.

61. Defendant violated the TCPA by placing numerous phone calls to Plaintiff's cellular telephone from July 2020 through the present day, using an ATDS and without his prior consent.

62. As pled above, Plaintiff was severely harmed by Defendant's collection calls to his cellular phone.

63. Upon information and belief, Defendant has no system in place to document and archive whether it has consent to contact consumers on their cellular phones.

64. Upon information and belief, Defendant knew its collection practices were in violation of the TCPA, yet continued to employ them to increase profits at Plaintiff's expense.

65. Upon information and belief, Defendant's phone system can store telephone numbers to be called, using a random or sequential number generator, which it may very well have used to call Plaintiff on his cellular phone.

66. The calls placed by Defendant to Plaintiff were regarding business activities and not for emergency purposes as defined by the TCPA under 47 U.S.C. §227(b)(1)(A)(i).

67. Defendant, through its agents, vendors, representatives, subsidiaries, and/or employees acting within the scope of their authority acted intentionally in violation of 47 U.S.C. §227(b)(1)(A)(iii).

68. Pursuant to 47 U.S.C. §227(b)(3)(B), Defendant is liable to Plaintiff for a minimum of $500 per call. Moreover, pursuant to 47 U.S.C. §227(b)(3)(C), Defendant's willful and knowing violations of the TCPA should trigger this Honorable Court's ability to triple the damages to which Plaintiff is otherwise entitled to under 47 U.S.C. §227(b)(3)(C).

WHEREFORE, Plaintiff, NATHANIEL PHILLIPS, respectfully requests that this Honorable Court enter judgment in his favor as follows:

a. Declare Defendant's phone calls to Plaintiff to be violations of the TCPA;
b. Award Plaintiff damages of at least $500 per phone call and treble damages pursuant to 47 U.S.C. § 227(b)(3)(B)&(C);
c. Enjoining Defendant from further communicating with Plaintiff; and
d. Awarding any other relief as this Honorable Court deems just and appropriate.

**Plaintiff demands a trial by jury.**

Dated:  August 27, 2020                    Respectfully Submitted,

/s/ Majdi Y. Hijazin

Majdi Y. Hijazin, *Of Counsel*
Counsel for Plaintiff
Sulaiman Law Group, Ltd.
2500 S. Highland Avenue, Suite 200
Lombard, IL 60148
Phone: (630) 575-8181
Fax: (630) 575-8188
mhijazin@hijazinlaw.com